IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTH STAR ALASKA HOUSING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-460C |
| v. | ) | |
| | ) | (Judge Allegra) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S CONSENT TO AMENDMENT OF COMPLAINT

Defendant, the United States, consents to plaintiff amending its complaint in a manner identical to the attached draft First Amended Complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Timothy P. McIlmail
TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0342
Facsimile: (202) 514-7965

OF COUNSEL
ANA-VALLI GORDON
Assistant District Counsel
United States Army Corps of Engineers
Galveston District

September 2, 2008

Attorneys for Defendant

ATTACHMENT

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **NORTH STAR ALASKA HOUSING CORPORATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | No. 08-460C<br>(Judge Allegra) |

## FIRST AMENDED COMPLAINT

Plaintiff North Star Alaska Housing Corporation for its First Amended Complaint alleges:

## INTRODUCTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491, *et seq.* and 41 U.S.C. § 601, *et seq.*

## THE PARTIES

2. The plaintiff is North Star Alaska Housing Corporation ("North Star"), an Alaska corporation with its principal offices at 937 Harvard Avenue East, Seattle, Washington 98102.

3. The defendant is the United States of America, acting through officials representing the Secretary of the Army and the Chief of the Army Corps of Engineers (the "Government").

## NATURE OF THE ACTION

4. This is an action for breach of contract arising out of the Lease agreement between North Star and the Government for the 400-unit Army housing complex on Fort Wainwright, Alaska known as Birchwood Homes or Birchwood Property (the "Lease") which

was entered into by virtue of the authority of 10 U.S.C. § 2828, as amended by Section 801 of Public Law 98-115 ("Section 801"). Section 801 introduced privatization into the military housing market, and represents an effort by Congress to ensure that soldiers and their families receive quality, safe, affordable, and convenient housing options that had been lacking when military housing was exclusively Government-run.

5. As set forth below, and as found by this Court in its Opinion dated April 2, 2007, in *North Star Alaska Housing Corporation v. The United States*, Nos. 98-168C, 02-1632C and 03-2699C (the "Opinion"), the Government has breached its Lease with North Star and has acted in bad faith in resolving disputes related to its administration of the Lease.

6. Prerequisite jurisdictional matters with respect to the filing of this Complaint and with respect to the claims asserted in this Complaint have been met. By letter dated August 23, 2007, North Star submitted to the Contracting Officer a certified claim in the sum certain amount of $1,887,822.04, and requested a final decision within 60 days. (A copy of this claim letter, without attachments, is Exhibit A, hereto.) North Star's claim consists of the following seven (7) major claim areas and is based in large part on the declaratory rulings set forth in the Opinion: Rent Abatements; Unpaid Occupant Damages; Incentive Fees; Depreciation; Cost Book Approval; Additional Payroll; and Outstanding Overhead and Margin.

7. The Government has issued four separate contracting officer final decisions relating to North Star's August 23, 2007 claim.

8. By letter dated October 19, 2007, the Contracting Officer requested a total of six months, until February 27, 2008, to make a decision on the majority of North Star's claims in order to conduct an audit of the matters, notwithstanding that the very same matters were the

subject of substantial investigation by the Government when the contractual issues were previously before the court. The Defense Contract Audit Agency ("DCAA") audit that ensued appeared to be conducted without the benefit of the information previously gathered by the Government during the 2005 trial and the Contracting Officer did not direct the DCAA auditor to review the court's Opinion prior to initiating the audit.

9. By letter dated October 25, 2007, ( Exhibit C) the Contracting Officer issued a final decision ("COD") on North Star's claims relating to Rent Abatements (years 2002, 2003 and 2005), and on the following portions of North Star's claims relating to Unpaid Occupant Damage: Matching Carpet Unit 884; Carpet and Vinyl Unit 883; Gutter Downspout Unit 638; Carpet and Counter Unit 961; Repainting Bathroom Unit 961; Water Damage Units 1006,1229 and 952; and Floor Matching Unit 623. The Contracting Officer awarded North Star a sum total of $62,474.35 for the claims addressed in the COD and further found that North Star should receive interest on the principle amount awarded from the date of the receipt of North Star's COD request (August 27, 2007) until paid.

10. On December 7, 2007, the contracting officer issued another partial final decision addressing Part C of North Star's August 23, 2007 claim, concerning "Incentive fees for the years 1995, 1996 and 2002-2006." (Exhibit D). Of the $338,056.45 claimed amount addressed in the December 7, 2007 final decision, the contracting officer awarded $268,048.22, plus CDA interest from August 27, 2007 until paid.

11. Not until March 12, 2008, 203 days after submission of the claim, did the contracting officer issue another partial final decision addressing all remaining items in North Star's August 23, 2007 certified claim, including matching surfaces, wall repairs, stove

replacements, carpet, depreciation, cost book approval, additional payroll, outstanding overhead and margin, and additional 40% overhead. (Exhibit E) Of the $1,454,654.00 claimed amount addressed in the March 12, 2008 final decision, the contracting officer awarded $870,404.00, plus CDA interest from August 27, 2007 until paid. The $870,404.00 award included zero dollars for occupant damaged carpet, $6,727.00 for occupant damaged stoves and $222,426.00 for additional payroll.

12. By letter dated April 29, 2008, North Star requested the contracting officer to reconsider portions of her December 7, 2007 and March 12, 2008 final decisions. (Exhibit F, without attachments) Specifically, with regard to the December 12, 2008 final decision, North Star indicated it was entitled to incentive fees for all of 2006 and a 2007 incentive fee prorated through May 2007, for a total award of $98,480.69. Since the December 7, 2007 final decision only granted an award of $36,549.55 for 2006 and none for 2007, North Star requested in its April 29, 2008 letter that an additional incentive fee award of $61,913.14 be granted. In its April 29, 2008 letter, North Star asked the contracting officer to reconsider both entitlement and quantum relating to its claim for $167,728.04 for occupant damaged carpet. With regard to North Star's claims relating to occupant damaged stoves and additional payroll, North Star only asked the contracting officer to make an additional award of $104,028.84 for occupant damaged stoves and $202,310.00 for additional payroll costs. Thus, North Star's April 29, 2008 letter asked the contracting officer to award a total additional amount of $535,980.62, plus CDA interest from August 29, 2007 until paid. (Exhibit F).

13. In response to North Star's request for reconsideration of the December 7, 2007 and March 12, 2008 final decisions, the contracting officer issued her final decision of

June 2, 2008 (received June 6, 2008). (Exhibit G). In this final decision, the contracting officer awarded North Star an additional $1,789.00, to correct a calculation error in her March 12, 2008 final decision relating to additional overhead and margin on occupant damaged stoves. With regard to the other claim items identified in North Star's April 29, 2008 request for reconsideration, the contracting officer declined to award any additional damages. Thus, the total amount that remains in dispute is $534,191.63 [$535,980.62 - $1,789.00 = $534,191.63].

14. Pursuant to the March 12, 2008 decision referenced above, North Star has been paid to date only $633,703.59 out of the $870,404 awarded, for an unpaid balance of $236,700.41.

15. Although the contracting officer's June 2, 2008 final decision awarded North Star an additional $1,789.00, that amount also remains unpaid.

16. Thus, ten months have passed since the filing of North Star's claim with the contracting officer and CDA interest on a majority of amounts paid remains due and, of the amounts awarded, $238,489.41 ($236,700.41 + $1,789.00) remains unpaid. The Government, in its Answer to North Star's original Complaint in this action, has now taken the position "that the commencement of this action has placed issues considered by the contracting officer into litigation and thereby taken from the Department of the Army the authority to pay at least $229,153 of the $238,489.41 referenced in the second sentence of paragraph 14." Government's August 22, 2008 Answer, Paragraph 14.

17. North Star hereby timely appeals the contracting officer's June 2, 2008 final decision.

## FACTUAL ALLEGATIONS

### I. Unpaid Occupant Damage – Stoves and Carpet

18. Contrary to the terms of the Lease, the Government instituted a practice of failing to correct occupant damage so that it would be viewed, upon the next tenant change over, as normal wear and tear. The Government also wrongfully required the matching of items that were adjacent to replaced items.

19. In the Opinion, this Court found that these and other practices constituted a breach of the Lease and the covenant of good faith and fair dealing. Opinion 63-64, 69-70, 85.

20. North Star has incurred additional costs as a direct result of these Government actions which required North Star to replace occupant damaged stoves and replace occupant damaged carpet. Of the $110,755.84 claimed for occupant damaged stove replacements, the contracting officer has awarded $8,516.00, leaving $102,239.84 in dispute despite substantial justifications provided by North Star. Contrary to the court's opinion, the contracting officer has refused to recognize any North Star entitlement for occupant damaged carpet despite substantial justifications provided by North Star, leaving the entire claimed amount of $167,728.64 in dispute. Thus, North Star is entitled to recover an additional $269,968.48 for unpaid occupant damage relating to stoves and carpet [$102,239.84 + $167,728.64 = $269,968.48].

### II. Incentive Fees

21. Article VII of the Lease provides that the Government may pay North Star an "incentive fee" of up to five percent of the maintenance rent for the period of time for which

North Star's performance is found by the Government to substantially exceed the established standards of the Lease.

22. In the Opinion, this Court found that the "incentive fee decisions made for 1995 and years subsequent in suit must be set aside as arbitrary and capricious." Opinion 66. The Court further found that it only had monetary jurisdiction over the incentive fee awards for the years 1997 through 2001.

22. North Star is also entitled to recover its full incentive fee award for all of 2006 and a 2007 incentive fee prorated through May 2007, for a total award of $98,480.69. The Government has only granted an award of $36,549.55 for 2006 and none for 2007. The Government has provided no reason for denying the full Incentive Fee awards for 2006 and 2007. Accordingly, North Star is entitled to an additional incentive fee award of $61,913.14.

**III. Additional Payroll**

23. During the term of the Lease, the Government began increasing North Star's downtime by improperly stockpiling units for same day release, failing to provide adequate notice of inspections, failing to provide work authorizations, failing to provide additional time for extensive repair work and by the improper use of extra-contractual inspections.

24. In the Opinion, the Court found that North Star was entitled to a declaration "regarding the correctness of its interpretations of the Lease, and the requirements of the covenant of good faith and fair dealing, with respect to the enumerated actions that increased downtime and otherwise increased North Star's costs." Opinion 85. See also Opinion 51-57 and Fact Appendix II.

25. North Star has incurred additional payroll costs due to the additional accounting

and scheduling burdens caused by the various Government breaches and it is entitled to recover these costs from the Government. The Contracting Officer determined that North Star should be compensated for the additional payroll costs, but made errors in its calculations of those costs. Of the $424,636 claimed by North Star for additional payroll, the contracting officer calculated an award of only $222,426, despite the fact that North Star provided evidence of its actual expenses to the auditor, leaving $202,310 in dispute.

## IV. Amounts Previously Awarded

26. Pursuant to the March 12, 2008 final decision of the contracting officer, North Star has been paid to date only $633,703.59 out of the $870,404 awarded, leaving an unpaid balance of $236,700.41.

27. The $1,789.00 awarded pursuant to the contracting officer's June 2, 2008 final decision also remains unpaid.

28. The total unpaid balance on the amounts previously awarded North Star therefore totals $238,489.41.

29. Despite its March 12, 2008 final decision, the Government has now taken the position that the commencement of this action has placed issues considered by the contracting officer into litigation and thereby taken from the Department of the Army the authority to pay at least $229,153.00 of the $238,489.41 unpaid balance. See Government's August 22, 2008 Answer, Paragraph 14.

30. The amounts awarded by the contracting officer in the March 12, 2008 final decision were not included in North Star's original Complaint. The contracting officer in her March 12, 2008 final decision awarded North Star $6,727.00 for occupant damaged stoves and $222,426.00

for additional payroll. North Star's original Complaint did not appeal the March 12, 2008 final decision. The only issues before the court in the original Complaint related to the proper additional amount for North Star's claim for occupant damaged stoves ($102,239.84) and the proper additional amount for payroll ($202,310.00), as addressed in the contracting officer's June 2, 2008 final decision.

31. North Star is entitled to payment of the $229,153.00 already awarded by the Contracting Officer.

## COUNT I

## BREACH OF CONTRACT

32. Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

33. The Government has continued to breach its Lease with North Star, as set forth above and as found in the Opinion.

34. As a direct and proximate result of the Government's breaches, North Star has suffered damages in an amount of $763,344.63.

## COUNT II

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

35. Paragraphs 1 through 28 above are incorporated by reference as if fully set forth herein.

36. The Lease and other contract documents carry with them the obligation of the parties to conduct their affairs in good faith and to deal fairly with each other.

37. The Government's conduct under the Lease, set forth above and as found in the Opinion, is in direct violation of its duty of good faith and fair dealing.

38. As a direct and proximate result of the Government's conduct, North Star has suffered damages in an amount of $763,344.63.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully demands judgment against defendant as follows:

(A) Under Counts I and II, damages in an amount of $763,344.63;

(B) Appropriate interest, attorneys' fees, and costs; and

(C) Such other and further relief as the Court deems just and proper.

Dated: August ____, 2008

Respectfully submitted,

______________________________

PAUL W. KILLIAN

Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW

Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Counsel for Plaintiff

**CERTIFICATE OF FILING**

I hereby certify that a true and correct copy of the foregoing First Amended Complaint was served by first-class U.S. mail, postage pre-paid, this ___ day of August 2008, on:

Timothy P. McIlmail
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th floor
1100 L Street, NW
Washington, DC 20530

Attorney for Defendant

______________________________
Paul W. Killian